Frank, &c., v. Quast, &c.

CASE 85—PETITION ORDINARY—FEBRUARY 9.

# Frank, &c., v. Quast, &c.

### APPEAL FROM BRECKINRIDGE CIRCUIT COURT.

NEGOTIABLE INSTRUMENTS—ACCOMMODATION DRAWERS.—Where a bill of exchange is drawn and indorsed for the accommodation of the acceptors, upon the condition that it shall be discounted at a particular bank, a purchaser of the bill before maturity, without notice of the secret agreement, is not affected by it, although he may have taken the bill in payment of a pre-existing debt; and he may, therefore, recover upon the bill in an action against the drawers.

LEWIS & FAIRLEIGH FOR APPELLANTS.

An agreement between an accommodation drawer and the drawee of a bill of exchange that it should be discounted at a particular bank may be shown in defense by the drawer, where the bill is in the hands of a holder for value, and the holder knew, or could have known by the exercise of ordinary care, of the restriction as to place of discount.

JAMES G. HASWELL & M. A. MASON FOR APPELLEES.

It is immaterial that the bill was discounted at a different place, or the proceeds applied to a different purpose from that agreed upon with the drawer, if such agreement was unknown to the one receiving and discounting the bill. (Daniels on Negotiable Instruments, volume 1, page 742.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

Frank & Sons were merchants, doing business in Breckinridge county. They desired to raise money, and induced the appellants to become the drawers of a bill payable to themselves, addressed to Frank & Sons, who accepted it. The bill was then indorsed in blank by the drawers, and delivered to the acceptors, Frank & Sons, to be presented for discount to the Breckinridge Bank, where it was agreed, at the time the accommodation paper was drawn, it should be negotiated. This agreement was between the drawers

and the acceptors, and it is alleged by the defense here
that it was on this express condition that the paper
was executed by the drawers. The bill was made pay-
able at the Breckinridge Bank, but when presented the
bank declined to discount it, the bill remaining in the
possession of the acceptors, Frank & Sons. The draw-
ers, ascertaining that Frank & Sons were embarrassed,
notified the bank not to discount the paper, and one
of the drawers went to the house of Frank & Sons
to obtain the paper, but failed to do so.

Frank & Sons had been purchasing goods in the
city of Louisville, and while in that city, and being
indebted to the appellees, Quast & Schulten, they
induced the latter to accept the bill in payment of a
debt due them, and made purchases of goods with the
balance raised. The paper was discounted by one of
the Louisville banks, and sent by that bank to the
Breckinridge Bank for collection, where it was pro-
tested. The appellees, Quast & Schulten, having in-
dorsed the paper, took it up, and now bring this suit
against the drawers, who make the defense that one
of the conditions of its execution was, that it should
be discounted at the bank in Breckinridge county at a
particular time. It appears that when the paper was
presented to the appellees, or when the appellees
*asked* Frank & Sons, or the member representing the
firm at the time, for payment of their debt, that Frank
replied he had been making efforts to raise the money,
and had failed to get it, saying further that he had a
bill drawn for his accommodation payable at the Breck-
inridge Bank, and that bank had declined to discount
it. Then it was the appellees said to Frank that it

could be discounted in the city of Louisville, to which Frank readily assented, and delivering the bill to the appellees, they had it discounted in the manner and for the purposes already stated.

The paper had not matured when discounted, and there is no evidence conducing to show bad faith on the part of the appellees in discounting the paper, or that they had any notice of the agreement between the parties to the bill that it should be negotiated at the Breckinridge Bank and nowhere else. The appellees had no reason to suspect the honesty of its debtors, and took the paper as innocent holders for value.

This defense is based on the idea that the party for whose benefit it was made was the agent of the drawers, and that the agent, having no more power than that given him by the principal, his acts beyond that authority are void. If Frank had notice of the restriction, or was placed on inquiry in regard to the manner in which this paper was to be disposed of by the acceptors, there might be some plausibility in the defense. The fact that the proceeds of the bill were applied to the payment of a pre-existing debt was not evidence of notice, nor did it destroy the *bona fides* of the transaction. In fact, the very purpose of the drawers and acceptors in making the paper was to enable these debtors to pay their debts, the drawers knowing that they were hard pressed for money; and being assured by Frank & Sons that as soon as they sold their tobacco the money would be replaced, they drew the bill. Frank & Sons had the right to transfer the paper; it was indorsed by the appellants and delivered to Frank that he might transfer it, and obtain the money. It

may have been that the money raised was intended
to be applied to the payment of these Louisville debts,
and the appellees being *bona fide* holders of the paper,
the court will not inquire into the question of agency
for the purpose of relieving parties who have placed
it in the power of others to discount such paper. There
was no defect in the title, and the right to transfer the
paper was unrestricted by any of its stipulations.

The paper was made for the accommodation and use
of Frank & Sons, and no restriction as to the applica-
tion to be made by them of the money. Mr. Daniels,
in his work on Negotiable Instruments, says: "It is
immaterial that paper executed or indorsed for ac-
commodation is not used in precise conformity with
agreement, when it does not appear that the accommo-
dation party had any interest in the manner in which
the paper was to be applied. No change in the mere
mode or plan of raising the money, though not applied
to the purpose intended by the accommodation party,
will constitute a misappropriation." (Volume 1, page
742.) Again: "The accommodation party must have
some interest in the application of the money, otherwise
he is in no condition to contend there has been a misap-
propriation of it, or of the security on which it was to
be raised." This doctrine was applied to a case where
the party had applied the proceeds to a pre-existing
debt. "It is now well-settled that where a note is
indorsed for the accommodation of the maker, to be
discounted at a particular bank, it is no fraudulent
misappropriation of the note if it is discounted at
another bank, or used in the payment of a debt or
otherwise for the credit of the maker." (Daniels on
Negotiable Instruments, volume 1, p. 742.)

Here the drawers and indorsers gave to Frank & Sons the use of their names to raise money in any way beneficial to that firm, without restriction or condition, except, as they say, the money was to be obtained from a particular bank. Such a condition, unknown to a *bona fide* holder, can not affect the validity of the bill in his hands, and from the facts before us we perceive no merit in the defense.

Judgment affirmed.